**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ELIASH FALCO<br>15 Smith Road<br>York, PA 17406 | :<br>:<br>: No. _____<br>: |
|               Plaintiff,<br>     v. | :<br>:<br>:<br>: |
| COMMUNICATIONS WORKERS OF<br>AMERICA,<br>Local 13000<br>230 South Broad Street, 19th Floor<br>Philadelphia, PA 19102<br><br>And | :<br>:<br>:<br>:<br>:<br>:<br>: |
| COMMUNICATIONS WORKERS OF<br>AMERICA, AFL-CIO<br>230 South Broad Street, 19th Floor<br>Philadelphia, PA 19102<br><br>And | :<br>:<br>:<br>:<br>:<br>:<br>: |
| VERIZON SERVICES, CORPORATION<br>P.O. Box 627<br>Basking Ridge, NJ 07920<br><br>And | :<br>:<br>:<br>:<br>:<br>: |
| VERIZON CORPORATE SERVICES<br>CORPORATION<br>P.O. Box 627<br>Basking Ridge, NJ 07920<br><br>And | :<br>:<br>:<br>:<br>:<br>: |
| VERIZON CONNECTED SOLUTIONS,<br>INC.<br>P.O. Box 627<br>Basking Ridge, NJ 07920 | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

And                                          :
                                             :
VERIZON PENNSYLVANIA, INC.                   :
1170 Enterprise Ct.                          :
East Petersburg, PA 17520                    :
                                             :
And                                          :
                                             :
JOHN DOES                                    :   **JURY TRIAL DEMANDED**
                                             :
            Defendants.                      :
                                             :
                                             :

## COMPLAINT FOR BREACH OF LABOR UNION'S DUTY OF FAIR REPRESENTATION, BREACH OF CONTRACT AND WRONGFUL TERMINATION

NOW COMES the Plaintiff, Eliash Falco (hereinafter "Plaintiff"), by and through his attorneys at Hopkins & Schafkopf, LLC and Weisberg Law and in complaint against the Defendants Communications Workers of America, Local 13000, Communications Workers of America, AFL-CIO, Verizon Services Corporation, Verizon Corporate Services Corporation, Verizon Connected Solutions, Inc. and Verizon Pennsylvania, Inc. (collectively, hereinafter "Defendants"), states as follows:

### Nature of Action

1. This action arises out of a violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce, pursuant to 29 U.S.C.A. §185; see also *Vaca v. Sipes*, 87 S.Ct. 903 (1967).

### Jurisdiction and Venue

2. Jurisdiction in this Honorable Court is based on a violation of federal law conferred by 28 U.S.C. § 1331.

3. Venue lies in the district in that the events giving rise to this claim occurred here, at least one (1) Defendant resides, maintains a principal place of business, and/or business here, and/or the property which is the subject of this action is situated within this district.

4. This action arises out of a violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce, pursuant to 29 U.S.C.A. §185, of which a copy of the Collective Bargaining Agreement entitled Agreement between Communications Workers of America AFL-CIO and Verizon Connected Solutions, Inc., August 3, 2008, is attached and incorporated herein as Exhibit A.

## Parties

5. Plaintiff, Eliash Falco, resides at the above captioned address.

6. Defendants, Communications Workers of America Local 13000 and Communications Workers of America, AFL-CIO (collectively the "Union"), are a labor Union who have a collective bargaining agreement with Defendant, Verizon, with its principal place of business located at the above captioned address.

7. Defendant, Verizon Services, Corporation, is a foreign corporation, incorporated in the State of New Jersey and doing business in the State of Pennsylvania.

8. Defendant, Verizon Corporate Services Corporation, is a foreign corporation, incorporated in the State of New Jersey and doing business in the State of Pennsylvania.

9. Defendant, Verizon Connected Solutions, Inc., is a foreign corporation, incorporated in the State of New Jersey and doing business in the State of Pennsylvania.

10. Defendant, Verizon Pennsylvania, Inc., is a Pennsylvania Corporation doing business in the Commonwealth of Pennsylvania with its principle place of business located at the above captioned address.

11. At all times relevant, Plaintiff was a member in good standing of the Union.

### Facts

12. Plaintiff began working as a Systems Technician for Verizon on or about October 1, 1990 until his termination on December 19, 2013.

13. Plaintiff was provided with a company vehicle to use throughout the day to drive to job sites; his employment included building and coordinating phone systems for Verizon customers.

14. Plaintiff worked approximately forty (40) hours per week at a rate of approximately thirty-six dollars ($36) per hour. Plaintiff would occasionally work five (5) to ten (10) hours of overtime a week, season dependent.

15. Plaintiff was a member of the Union (beginning on or about October 1, 1990) and paid ongoing membership fees.

16. As a union member, those fees included representation by the Union in the event of alleged violations of employment.

17. On November 21, 2013, Plaintiff was informed by a Verizon representative that he was being followed by a GPS tracking device that was installed in his company truck and photographed for a period of three and half (3 ½) months, due to potential violations of company policy.

18. The reason Plaintiff believes he was being followed was due to a former coworker, Lisa Benefiel, who constantly made complaints about Plaintiff to management about his work

ethic. Benefiel was the only Verizon employee who made comments and complaints about Plaintiff.

19. However, even if there was suspicion regarding Plaintiff's conduct, according to Verizon's Code of Conduct Policy, "use of recording devices without the consent of both parties is unlawful." Exhibit B.

20. As a result of Plaintiff being followed and photographed, Verizon informed Plaintiff on November 21, 2013 that a mandatory security meeting would be held.

21. That security meeting was held on November 21, 2013.

22. In that first (and only) security meeting with Verizon, Plaintiff was instructed by, Plaintiff's supervisor, Jeffrey Swineheart, to wait for his Union Representative.

23.  Jason Zinzer, the local union steward, would have been Plaintiff's representative; however, he was on vacation at the time.  Instead, Plaintiff was assigned Rick Lambert as his Union representative for the meeting.

24. Plaintiff met Lambert for the first time just prior to the meeting.

25. Lambert advised Plaintiff to refrain from speaking during the meeting because the Union would handle his representation.

26. Lambert was directed to give these instructions by Andrew Miller, Regional Vice President of Local 13000.

27. At no time prior did Plaintiff and Mr. Lambert discuss what the security meeting would be about.

28. The security meeting was about two (2) hours long.

29. Those who were at the security meeting were: Plaintiff; Rick Lambert; Charles Snyder, Security Agent; and Heriberto Feliciano, Security Consultant.

30. During the meeting, Feliciano made several allegations regarding Plaintiff's violation of Verizon's employment policy: prolonged lunch breaks while visiting the doctor's office including one visit on October 31, 2013; prolonged hours while at physical therapy; violation of Uniform Policy; and using a company ladder for a personal matter.

31. Feliciano did not allow Plaintiff to explain or clarify any of the accusations that were being made against him.

32. Plaintiff never received a written list of the accusations or saw any of the photographs that were taken of him.

33. During the security meeting, the first accusation made against Plaintiff was that he was using company time and money to complete personal tasks – including going to doctors' appointments and physical therapy during his lunch break. Photographs were taken of Plaintiff leaving the doctor's office and physical therapy.

34. Regarding the October 31, 2013 accusation, Plaintiff had a doctor's appointment scheduled during his lunch break. At the doctor's appointment, Plaintiff brought with him his work tablet.

35. Tablets were given by Verizon to their employees in order to keep track of any work that needed to done or any other customer related information. Employees were instructed to learn how to use these tablets.

36. Verizon allowed employees to learn how to make use of these tablets anywhere they chose, as long as they completed the task. Employees were working as long as they were learning to use their tablets.

37. Service calls were slow at the time (October, 2013), so Plaintiff thought this was a prime opportunity to use the tablet. He brought it with him to the doctor's appointment as allowed under company policy.

38. For example, on October 31, 2013, Plaintiff was with the doctor for a duration of five (5) minutes. The forty-five (45) or so minutes he was waiting in the doctor's office, he was learning how to use the tablet for work.  Exhibit C.

39. Verizon alleges Plaintiff was in physical therapy for hours at a time – accused of misappropriating company time and money.

40. Plaintiff was in physical therapy for about thirty (30) to forty-five (45) minutes or so.

41. According to Verizon, Plaintiff was seen leaving his company truck there several times in the duration he was being photographed.

42. It was never brought up that there is a Verizon facility across the street from the physical therapy office, so Plaintiff did not feel the need to re-park his vehicle across the street. Instead, he walked over to the facility.

43. While walking over to the Verizon facility, on one occasion, Plaintiff was stopped by customers because he was in work uniform. Plaintiff assisted those customers with whatever issue they presented him with. Plaintiff was photographed assisting those customers.

44. While Plaintiff was assisting those customers, he called a coworker for assistance, Brian Callahan.

45. When Plaintiff was done his work day, he retrieved his company vehicle from the physical therapy office's lot.

46. To note, when business was slow, dispatch and management informed Plaintiff and other employees to "hang out" until there was word for specific work to be done. In the meantime, Plaintiff would often go to neighborhoods and fix downed lines or other issues that he came across.

47. Even if Plaintiff was found to have taken an unauthorized break on company time, he worked fifteen (15) hours overtime (in the mechanics garage) without documenting it – to compensate any allegations made against him.

48. The above accusations led Verizon to state that Plaintiff was falsifying time sheets. However, Local Management is well aware it is impossible to track every detail of a work day.

49. For example, Plaintiff received a call one day from his boss requesting Plaintiff to come to a job-site to speak Spanish to a customer. Because there is no way of documenting this on a timesheet, Plaintiff did not document this.

50. Plaintiff was instructed by a Local Manager, Joe Geiger, that employees should not log "lag-time" or "down-time" because it would not look good on their year-end reports. Those reports could have an impact on the amount of employees Verizon would potentially need to employ as well as the amount of management that was needed.

51. Verizon alleged that Plaintiff was seen wearing shorts in the photographs which Verizon claims was not permitted under the Uniform Policy.  Plaintiff admits to have worn shorts, but does not believe that is a dischargeable action without a prior warning.

52. Verizon then alleged Plaintiff used a company ladder for personal use, but does not believe that is a dischargeable action without a prior warning.

53. Plaintiff admits to this claim because he was responding to an emergency plumbing issue at his home.

54. Plaintiff had no belief that use of the company ladder was an issue because management had previously allowed him to use the ladder for personal use.

55. Per the Union's instructions by Lambert, he did not defend any accusations made against him.

56. After the security meeting, Lambert told Plaintiff that the Union, at a later time, will schedule a meeting after the (November 21, 2013) security meeting to prepare a defense.

57. This meeting never took place.

58. Plaintiff was informed after the security meeting that Verizon was putting him on an unpaid suspension. Thus, Plaintiff was put on suspension on November 21, 2013.

59. According to the Bylaws and Rules of Local 13000, "accused parties have a right to select a member of the Union as counsel, the right to produce witnesses and present documentary evidence, and to be heard on the accused's own behalf." This procedure was not upheld. Exhibit D.

60. Plaintiff was due to retire in early December 2013. A week after his disciplinary suspension, he received paperwork to regarding his retirement.

61. Plaintiff had to inform Verizon between January 2014 to April 2014 whether or not he was going to retire. However, once an employee is suspended, he was not eligible to receive his retirement funds.

62. Plaintiff's decision would have been to retire. Although local Verizon managers, Jeffery Swineheart and Anthony Gomez, signed off on the paperwork for Plaintiff to receive the retirement funds, he was denied.

63. Plaintiff was terminated on December 19, 2013 due to the accusations made against him.

64. About a week after Plaintiff's termination. Mr. Lambert forwarded an email from the Union President, Andy Miller, to Plaintiff informing him that, Mark Eisenhauer, Plaintiff's former local president, would be his contact person. The e-mail also discouraged Plaintiff to write any defense on his behalf because it could have been used against him. The e-mail made clear that the Union would provide Plaintiff legal representation, develop a plan, gather facts, and schedule a follow up meeting. This never took place.

65. Plaintiff contacted Eisenhauer, February 2014, by telephone asking for an update, hoping to schedule a meeting to go over his defenses. However, the only feedback Plaintiff received was that the Union was "handling it."

66. Eisenhauer never informed Plaintiff of any grievance process that may have taken place until Plaintiff received a phone call from Union Representative, Lisa Fazzini on or about July 2014, several months later.

67. The phone call between Plaintiff and Fazzini was a discussion of the November 21, 2013 meeting that lasted for about twenty (20) minutes. Fazzini called to confirm about the events that took place during the security meeting. Fazzini informed Plaintiff she would call him back.

68. After several months and many attempts to contact Fazzini directly on her cell phone, Plaintiff never received a call back.

69. Plaintiff then phoned his Union on or about November 2014, when the secretary in the Pittsburgh office, informed him that Fazzini had been transferred to another region.

70. However, two months later, on or about January 2015, Ms. Fazzini contacted Plaintiff to inform him she was still working on his case. However, there was no more contact between the two following that phone conversation.

71. Plaintiff received a letter dated August 11, 2015 from the Union denying the grievance for an arbirtration. The letter was from James N. Byrne, Assistant Vice President of District 2-13 of the Union. However, Plaintiff had no knowledge such a process was being held so he appealed the denial. Exhibit E.

72. Plaintiff sent out a letter dated, August 18, 2015 in response to the denial of the grievance process. In his letter, Plaintiff provides defenses to the allegations made during the November 21, 2013 meeting. This was the first time Plaintiff was given the opportunity to make any defense. Exhibit F. The Union acknowledged receipt of this letter by their letter of August 26, 2015. Exhibit G.

73. Plaintiff received a letter dated November 5, 2015 denying his appeal made August 18, 2015. This letter was from Edward F. Mooney, International Vice President of the Union. Exhibit H.

74. Part of the reason for his denial was because Plaintiff did not defend himself during the November 21, 2013 meeting.

75. However, Plaintiff was instructed to not speak during that meeting because the Union would handle his representation.

76. Plaintiff was again given the opportunity to appeal the denial. The appeal was sent to the president of the Union, Christopher Shelton.

77. On November 18, 2015, Plaintiff sent out another letter of appeal defending himself based on the accusations made against him during the November 21, 2013 meeting. Exhibit I.

78. Plaintiff received a letter dated December 22, 2015 from Mr. Shelton denying Plaintiff's appeal once again. Plaintiff was given the opportunity to appeal the denial for the third time. Exhibit J.

79. On January 4, 2016, Plaintiff once again appealed the denial to Defendant. In that appeal, Plaintiff stressed he did not receive his rights as a Union Member for proper representation. Plaintiff explained how he was not given an opportunity to defend himself when Verizon made several accusations against him during the November 21, 2013 meeting. The appeal also mentioned Plaintiff's countless attempts to try and get in contact with several people regarding his case. Exhibit K.

80. Plaintiff received a letter dated February 26, 2016 from Sara Steffens, Secretary Treasurer of the Union. This letter stated Plaintiff's appeal was denied again and he has exhausted his appeals internally. Exhibit L.

81. Defendant, Communications Workers of America Local 13000, is bound by their agreement to provide representation for Plaintiff.

82. Defendant's failure to provide Plaintiff with appropriate representation lead Plaintiff to lose his employment, his retirement, and additional financial losses.

## COUNT I
## BREACH OF DUTY OF FAIR REPRESENTATION

83. The foregoing paragraphs are fully incorporated herein as though set forth at length.

84. At all times material, Plaintiff's employment with Verizon was subject to a collective bargaining agreement ("CBA") under the Union.

85. Plaintiff was entitled to fair and actual representation from the Union.

86. Defendant breached its duty to fairly represent by the following acts and omissions:

a. Failed to provide fair and actual representation during the security meeting to defend Plaintiff on the accusations being made against him.

b. Failed to object to the use of recording devices without the consent of both parties. As stated as unlawful according to Verizon's Code of Conduct Policy.

c. Failed to prepare Plaintiff for his security meeting with Verizon.

d. Failed to explain on Plaintiff's behalf or in the alternative explain or clarify for Plaintiff during the meeting any of the accusations that were made against him.

e. Failed to schedule a meeting after the security meeting to prepare a defense.

f. Failed to uphold the Bylaws and Rules of Local 13000, which state "accused parties have a right to select a member of the Union as counsel, the right to produce witnesses and present documentary evidence, and to be heard on the accused's own behalf."

g. Failed to allow Plaintiff to retire and receive his retirement funds because he was suspended. (Local management signed off on the paperwork to receive the retirement funds, but he was denied.)

h. Failed to properly provide Plaintiff with legal representation, develop a plan, gather facts, and schedule a follow up meeting according to the Bylaws and Rules of Local 13000. The Union also picked the Union Representative for the Plaintiff and also discouraged Plaintiff from writing any defense in which also goes against the Bylaws and Rules of Local 13000.

i. Failed to request an Arbitration where Verizon breached the CBA by suspending and terminating Plaintiff from his employment.

j. Allowed Plaintiff to be terminated on facts that the Union was aware were false.

87. As a result of Defendant's breach of the CBA, Plaintiff sustained significant economic loss.

WHEREFORE, Plaintiff requests this Court:

    A.  Find that the Union has violated applicable law, reinstate Plaintiff in his position with Verizon, award Plaintiff compensatory damages to compensate him for his damages, including but not limited to , back wages, front wages, employee benefits, and other emoluments of employment, with interest as permitted;

    B.  Award attorneys' fees and costs arising out of this action; and

    C.  Grant any other relief this court deems equitable and just.

## COUNT II
## BREACH OF CONTRACT AND WRONGFUL TERMINATION

88. The foregoing paragraphs are fully incorporated herein as though set forth at length.

89. Verizon breached their contract with the Union and Plaintiff by the following acts and omissions:

a. Suspended and terminated the employment of Plaintiff without just cause;

b. Suspended and terminated the employment of Plaintiff based on false facts and missing relevant information;

c. Failed to adequately investigate the facts and circumstances prior to suspending and terminating the employment of Plaintiff;

d. Failed to follow the grievance procedures provided in the Union CBA with Verizon;

e. Wrongfully suspended and terminated the employment of Plaintiff;

f. Failed to allow Plaintiff to adequately address the false facts and allegations, which was

the alleged basis for the suspension and termination of Plaintiff's employment; and

g. Suspended and terminated the employment of Plaintiff based upon false facts and

missing relevant information.

WHEREFORE, Plaintiff requests that this Court:

    A. Find that Verizon has violated applicable law and award to Plaintiff

       compensatory damages to compensate him for damages, including but not

       limited to, back wages, front wages, employment benefits, and other

       emoluments of employment;

    B. Award attorneys' fees and costs arising out of this action; and

    C. Grant any other relief this court deems equitable and just.


Plaintiff, Eliash Falco,


By:__/s/ Gary Schafkopf__
     Gary Schafkopf, Esquire.
     Attorney for Plaintiff

Dated:__8/23/16__

By: ___/s/ Matthew B. Weisberg__
     Matthew B. Weisberg, Esquire
     Attorney for Plaintiff

Dated: ___8/23/16____